Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CHECKMAN, Individually And On Behalf Of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>ALLEGIANT TRAVEL COMPANY, MAURICE J. GALLAGHER, JR., and SCOTT SHELDON,<br><br>        Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Checkman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Allegiant Travel Company

("Allegiant" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Allegiant between June 8, 2015 and April 13, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Allegiant conducts business and has operations in this Judicial District, and the alleged misstatements entered and subsequent damages took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Allegiant common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

7.     Defendant Allegiant is a Nevada corporation with substantial operations located in Los Angeles, California. Allegiant focuses on the provision of travel services and products to residents of under-served cities in the United States. The company offers scheduled air transportation on limited frequency nonstop flights between under-served cities and leisure destinations. The Company's securities are traded on NASDAQ under the ticker symbol "ALGT."

8.     Defendant Maurice J. Gallagher, Jr. ("Gallagher") has served as Allegiant's Chief Executive Officer ("CEO") since 2003 and was designated Chairman of the Board in 2006.

9.     Defendant Scott Sheldon ("Sheldon") has been Allegiant's Chief Financial Officer ("CFO") since May 2010 and has been the Chief Operating Officer since October 2014.

10.    Defendants Gallagher and Sheldon are collectively referred to hereinafter as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

Class Action Complaint for Violation of the Federal Securities Laws

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

15.     On June 8, 2015, The Enquirer reported that the Company issued a statement in connection with an Allegiant plane that was forced to make an emergency landing in Florida after smoke was detected in the cabin shortly after takeoff. The Company stated afterward that the safety of its passengers and crew were its "number one priority," stating in pertinent part:

***At Allegiant, the safety of our passengers and crew is always our number one priority.*** Flight 864 with scheduled service from St. Pete-Clearwater International Airport (PIE) to Hagerstown, Md. departed PIE at 4:28 p.m. local time. Approximately eight minutes into the flight, the crew reported smoke in the cabin and returned to PIE, landing safely at 4:52. Upon landing, the crew acted swiftly to deploy emergency slides for passengers to deplane as quickly and safely as possible. Passengers are receiving full refunds for the flight as well as $200 off vouchers. Hotel stay will be provided for passengers that do not reside in the area. We are currently working to reschedule the flight to tomorrow.

(Emphasis added.)

16.     On February 22, 2016, the Company filed its annual report for the fiscal year ended December 31, 2015 on Form 10-K (the "2015 10-K") with the SEC, which provided the Company's annual financial results and position. The 2015 10-K was signed by Defendants Gallagher and Sheldon. The 2015 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Gallagher and Sheldon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

17.     The 2015 10-K emphasizes how the Company's maintenance technicians undergo comprehensive training and are experienced, that the Company's aircraft are maintained in accordance with FAA regulations, and that management closely supervises all maintenance functions performed by personnel and contractors, stating in relevant part:

**Aircraft Maintenance**

We have a Federal Aviation Administration ("FAA") approved maintenance program, which is administered by our maintenance department headquartered in Las Vegas. ***Technicians employed by us have appropriate experience and hold required licenses issued by the FAA. We provide them***

Class Action Complaint for Violation of the Federal Securities Laws

***with comprehensive training and maintain our aircraft in accordance with FAA regulations.*** The maintenance performed on our aircraft can be divided into three general categories: line maintenance, major maintenance, and component and engine overhaul and repair. Line maintenance is generally performed by our personnel. We contract with outside organizations to provide major maintenance and component and engine overhaul and repair. We have chosen not to invest in facilities or equipment to perform our own major maintenance, engine overhaul or component work. ***Our management closely supervises all maintenance functions performed by our personnel and contractors employed by us, and by outside organizations.*** In addition to the maintenance contractors we presently utilize, we believe there are sufficient qualified alternative providers of maintenance services that we can use to satisfy our ongoing maintenance needs.

(Emphasis added.)

18.     On April 29, 2016, the Company filed its amended annual report for the fiscal year ended December 31, 2015 on Form 10-K (the "2015 Amended 10-K") with the SEC, which amended the Company's prior 2015 Form 10-K. The 2015 Amended 10-K was signed by Defendants Gallagher and Sheldon. The 2015 Amended 10-K also contained signed SOX certifications by Defendants Gallagher and Sheldon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19.     The 2015 Amended 10-K referenced its code of ethics, applicable to the Company's directors, officers and employees:

**Code of Ethics**

We have adopted a Corporate Code of Conduct and Ethics (the "Code of Ethics") that applies to our principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions, as well as to other directors, officers and employees of ours. The Code of

Class Action Complaint for Violation of the Federal Securities Laws

Ethics is posted on our website (www.allegiant.com) and is available in print free of charge to any shareholder who requests a copy.

20. The Company's Code of Ethics, amended on May 6, 2015, states that the Company is required to: (i) remain "honest, fair and accountable in all business dealings"; (ii) "provide safe working conditions" to employees; (iii) "be a responsible and responsive corporate citizen in a moral, ethical and beneficial manner" to society and the local community; and (iv) "pursue growth and earnings objectives while adhering to ethical standards" as related to the Company's shareholders.

21. On February 24, 2017, the Company filed its annual report for the fiscal year ended December 31, 2016 on Form 10-K (the "2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Gallagher and Sheldon. The 2016 10-K also contained signed SOX certifications by Defendants Gallagher and Sheldon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

22. The 2016 10-K emphasizes how the Company's maintenance technicians undergo comprehensive training and are experienced, that the Company's aircraft are maintained in accordance with FAA regulations, and that management closely supervises all maintenance functions performed by personnel and contractors, stating in relevant part:

**Aircraft Maintenance**

We have a Federal Aviation Administration ("FAA") approved maintenance program, which is administered by our maintenance department headquartered in Las Vegas. ***Technicians employed by us have appropriate experience and hold required licenses issued by the FAA. We provide them with comprehensive training and maintain our aircraft in accordance with FAA regulations.*** The maintenance performed on our aircraft can be divided into three general categories: line

Class Action Complaint for Violation of the Federal Securities Laws

maintenance, major maintenance, and component and engine overhaul and repair. Line maintenance is generally performed by our personnel in certain cities of our network and by contractors elsewhere. We contract with outside organizations to provide major maintenance and component and engine overhaul and repair. We have chosen not to invest in facilities or equipment to perform our own major maintenance, engine overhaul or component work. ***Our management closely supervises all maintenance functions performed by our personnel and contractors employed by us, and by outside organizations.*** In addition to the maintenance contractors we presently utilize, we believe there are sufficient qualified alternative providers of maintenance services that we can use to satisfy our ongoing maintenance needs.

(Emphasis added.)

23.     On March 1, 2018, the Company filed its annual report for the fiscal year ended December 31, 2017 on Form 10-K (the "2017 10-K") with the SEC, which provided the Company's annual financial results and position. The 2017 10-K was signed by Defendants Gallagher and Sheldon. The 2017 10-K also contained signed SOX certifications by Defendants Gallagher and Sheldon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

24.     The 2017 10-K emphasizes how the Company's maintenance technicians undergo comprehensive training and are experienced, that the Company's aircraft are maintained in accordance with FAA regulations, and that management closely supervises all maintenance functions performed by personnel and contractors, stating in relevant part:

**Aircraft Maintenance**

We have a Federal Aviation Administration ("FAA") approved maintenance program, which is administered by our maintenance department headquartered in Las Vegas. ***Technicians employed by us have appropriate experience and***

Class Action Complaint for Violation of the Federal Securities Laws

***hold required licenses issued by the FAA. We provide them with comprehensive training and maintain our aircraft in accordance with FAA regulations.*** The maintenance performed on our aircraft can be divided into three general categories: line maintenance, major maintenance, and component and engine overhaul and repair. Line maintenance is generally performed by our personnel in certain cities of our network and by contractors elsewhere. We contract with outside organizations to provide major maintenance and component and engine overhaul and repair. We have chosen not to invest in facilities or equipment to perform our own major maintenance, engine overhaul or component work. ***Our management closely supervises all maintenance functions performed by our personnel and contractors employed by us, and by outside organizations.*** In addition to the maintenance contractors we presently utilize, we believe there are sufficient qualified alternative providers of maintenance services that we can use to satisfy our ongoing maintenance needs.

(Emphasis added.)

25.     The statements contained in ¶¶15-24 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Allegiant lacked adequate systems to ensure its aircraft were being properly maintained; (2) consequently, Allegiant was not operating responsibly and ethically, and providing safe working conditions for its employees; and (3) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

26.     On April 13, 2018, CBS News announced it would air a 60 Minutes segment on Sunday, April 15 2018, criticizing the Company's safety and maintenance record.

Class Action Complaint for Violation of the Federal Securities Laws

27.     On this news, shares of Allegiant fell $14.20 per share or over 8.59% to close at $151.05 per share on April 13, 2018.

28.     On April 15, 2018, CBS News aired a 60 Minutes report revealing that: (i) Allegiant aircraft had a high number of serious mechanical incidents from mid-2015 through October 2017; (ii) Allegiant lacks the infrastructure and personnel to adequately maintain their aircraft; and (iii) Allegiant has discouraged pilots from reporting safety and maintenance issues. The transcript of the interview provides, in relevant part:

ALLEGIANT AIR: THE BUDGET AIRLINE FLYING UNDER THE RADAR
*Steve Kroft investigates Allegiant Air, a discount carrier known more for its ultra-low fares than its high record of in-flight breakdowns*

* * *

Allegiant Air is a small, ultra-low-cost carrier based in Las Vegas, that happens to be one of the country's most profitable airlines. But, according to federal aviation records and interviews with pilots, mechanics and industry experts, it may also be the most dangerous.

The airline flew 12 million passengers last year on its 99 planes to 120 destinations from California to Florida. But it's had persistent problems since at least the summer of 2015 when it experienced a rash of mid-air breakdowns, including five on a single day. It was not a fluke.

***Public documents show an alarming number of aborted takeoffs, cabin pressure loss, emergency descents, and unscheduled landings. Yet for the most part, allegiant's difficulties have managed to stay under the radar of the flying public.***

* * *

Allegiant has some of the lowest fares, the least frills, and the oldest fleet in the business. Right now, nearly 30% of its planes are antiquated, gas-guzzling McDonnell-Douglas MD-80s, almost all of them purchased second-hand from foreign airlines. It also has more than its share of angry, traumatized passengers willing to share their experiences.

Dan Mannheim: People are screaming. The stewardess are running up and down the aisles.

Chris: And then the smoke started pouring in out of all the vents you know, started filling the cabin up with smoke.

Shanyl: All I kept thinking was, "Thank God we're on the ground."

For the past seven months, we have been scrutinizing 'service difficulty reports' filed by Allegiant with the FAA. They are official, self-reported records of problems experienced by their aircraft. What we found raised some disturbing questions about the performance of their fleet. *Between January 1st, 2016 and the end of last October, we found more than 100 serious mechanical incidents, including mid-air engine failures, smoke and fumes in the cabin, rapid descents, flight control malfunctions, hydraulic leaks and aborted takeoffs.*

John Goglia: Something significant is going on and it should be addressed.

*We shared the reports with John Goglia who has more than 40 years of experience in the aviation industry, including nine years as a presidential appointee to the National Transportation Safety Board. Now retired, Goglia remains a respected figure in the aviation industry and occasionally testifies as an expert witness on safety issues.*

John Goglia: There's another one, engine fire.

*We wanted to know what he thought of Allegiant's 60 unscheduled landings and 46 in-flight emergencies.*

*Steve Kroft: I mean, is that common for an airline of this size?*

*John Goglia: Very, very high for an airline of this size. I hate to make comparisons-- but we've seen that before in airlines that are no longer with us that had experienced a number of accidents and*

*killed a bunch of people. I don't wanna repeat that. So I try to push on Allegiant to-- to-- clean up their operation.*

*Steve Kroft: What do those reports say about Allegiant?*

*John Goglia: Well, just the service difficulty reports say that-- somebody's not paying attention.*

*Steve Kroft: You're a former member of the NTSB. Would you fly on an Allegiant plane?*

*John Goglia: I have encouraged my family, my friends and myself not to fly on Allegiant.*

We wanted to ask Allegiant and its CEO, Maurice Gallagher about all of this, what they gave us instead was a brief statement from their vice president of operations which says, in part:

"All of us at Allegiant are proud of our strong safety record, as noted in the most current, comprehensive FAA audit.  Safety is at the forefront of our minds and the core of our operations."

\* \* \*

*But John Goglia and other aviation experts we talked to aren't so sure. They believe Allegiant's problems come from the confluence of its aggressive business model and a safety culture they find to be lagging.* The business strategy which has produced 60 straight quarters of profits, occasionally with margins approaching 30 percent, requires the airline to keep costs down and "push the metal" – keep the planes flying as often as possible. But Allegiant's aged fleet of MD-80s, which it is phasing out and is responsible for most of its problems, require a lot of maintenance and reliable parts are hard to come by.

*Steve Kroft: Is there anything that separates the maintenance systems at Allegiant from the ones at the larger carriers?*

*John Goglia: Well, the first and most obvious piece is the lack of infrastructure. They don't have the number of mechanics. And we've seen some problems with the contractors that they've used.*

- 12 -

*We're seeing problems that require-- feet on the ground, people looking at the airplanes when they're being worked on so that these problems are caught during maintenance and not caught by the f-- crew as-- as a surprise and emergency.*

*We found numerous planes with the same recurring issues and others returned to service before they were ready. Like Allegiant Flight 533 last July, which was delayed in Cincinnati on its flight to Las Vegas.*

Mercedes Weller and Dan Mannheim, who says he paid $80 for his roundtrip ticket to Vegas, remember the pilot's announcement as they pushed away from the gate three hours behind schedule.

Mercedes Weller: He came on and he said, "The mechanics have been working on this right engine. We apologize for that. We'll get you up in the air as soon as possible." As we started taxiing, everything was going okay. And then it's, like, as soon as the wheels came up, the engine blew.

Passenger Video: Here we go, we're taking off. Say blastoff! Oh [expletive].

Mercedes Weller: The force of it was so hard that it-- it popped open the cockpit doors. And there was smoke in the cabin and fire coming out of that engine. And I just remember thinking that I would never see my daughter again.

Weller and Mannheim said the plane had to circle at a low altitude on one engine for about 25 minutes while the airport ground crews cleared debris from the runway for an emergency landing.

Dan Mannheim: Everyone turned their phones back on. And I called my family. And-- I pretty much tellin' 'em goodbyes.

Steve Kroft: You thought this was it?

Mercedes Weller: I text my husband. And I said "If something happens, just know that I've been very happy. And I love you."

Class Action Complaint for Violation of the Federal Securities Laws

The plane eventually landed safely back in Cincinnati. For their trouble, Allegiant offered to re-book Mercedes and Dan the next day and gave everyone a $150 voucher.

***But that was not the only problem Allegiant's small fleet encountered last July. There were nine other Allegiant planes that also had to make unscheduled landings during that month. Four of those planes had engine problems, two reported fumes in the cabin, four had instrument or flight control problems. And that's not all.***

***Steve Kroft: Over the course of one weekend in July, Allegiant canceled or rescheduled 11 separate flights leaving Las Vegas, all for mechanical issues.***

***John Goglia: You think that's a big red flag? Yeah--***

***Steve Kroft: Something's wrong***

***John Goglia: Something's wrong.***

***Among the most concerned are the people that have to fly the planes. Daniel Wells, a captain for Atlas Air, with 30 years experience, is president of Teamsters Union 1224 which represents pilots from Allegiant and nine other airlines.*** We wanted to know how unusual it was for a small airline with 99 planes to have 25 engine failures or malfunctions in less than two years.

Daniel Wells: Well, I-- I don't have all the data in front of me to compare with other airlines. But I can say that those are extraordinarily high numbers.

***Steve Kroft: Outside the norm?***

***Daniel Wells: Outside the norm for sure. If I come into a career as an airline pilot now, I will go my entire career, maybe 30 years, and never have an engine failure, ever.***

***Steve Kroft: What are Allegiant pilots telling you about their airline?***

- 14 -

Class Action Complaint for Violation of the Federal Securities Laws

*Daniel Wells: What I hear from hundreds of conversations with Allegiant pilots, is the management of Allegiant seems to denigrate the pursuit of safety.*

*Steve Kroft: Why are we unable to talk to any Allegiant pilots?*

*Daniel Wells: Well-- (LAUGH) I think that says volumes about the company. I would love to put up some of the-- Allegiant pilots. But they can't. And they can't because they know that they would be terminated. At the very least, disciplined. And that's just for speaking up about concerns. So I have to speak on their behalf.*

*Captain Wells says they have every reason to fear retaliation considering what happened to one of Allegiant's pilots three summers ago.*

On June 8, 2015, this Allegiant MD-80 jet with 141 passengers aboard had just left St. Petersburg, Florida for Hagerstown, Maryland when a flight attendant informed the pilot that there was smoke in the cabin.

Concerned about a fire, Captain Jason Kinzer and his co-pilot made a quick decision.

\* \* \*

Concerned about a fire, Captain Jason Kinzer and his co-pilot made a quick decision.

\* \* \*

Captain Kinzer landed the plane and was met at the end of the runway by fire and rescue trucks that confirmed his concerns.

\* \* \*

*[With the plane on the ground, the pilot] did what he had been trained to do: he deployed the emergency chutes and evacuated the aircraft, with eight people sustaining mostly minor injuries.*

*The incident drew unwanted attention to Allegiant but nothing compared to what followed six weeks later when the airline abruptly fired Kinzer for his actions.*

\* \* \*

Class Action Complaint for Violation of the Federal Securities Laws

Looking at the FAA's records, you would have to conclude that that is a very optimistic assessment. Go back to August 17, 2015 -- around the time the FAA switched priorities from enforcement to compliance – and you can see the differences in their approach. ***Allegiant Flight 436 was leaving Las Vegas full of passengers when it nearly crashed on takeoff. Barreling down the runway, the pilot had trouble controlling the plane. Running out of asphalt, he made a last-second decision to abort, traveling at 120 knots per hour, barely avoiding disaster.***

John Goglia: Something inside him said, "I'm not putting this in the air." And thank God he didn't, because that was-- gonna result in a bad outcome.

***The problem turned out to be a missing cotter pin that holds together essential components necessary for the pilot to fly the plane. John Goglia is a former member of the National Transportation Safety Board.***

***John Goglia: I mean, this is a critical flight control. So this isn't-- isn't fixing a coffee maker. This is fixing a critical flight component and obviously, that wasn't done adequately.***

According to the detailed report from the FAA investigator, Allegiant and its maintenance contractor, AAR, failed to perform procedures that would have caught the error no less than five times. The report called it "a deliberate and systemic act of non-compliance" that had endangered thousands of passengers on more than 200 subsequent Allegiant flights.

The inspector recommended strong enforcement action and maximum fines.

\* \* \*

***But even more disturbing are new allegations from the ranks of Allegiant's own pilots. Their union president, Captain Daniel Wells, says he's concerned that Allegiant is trying to gain a competitive cost advantage by softening safety standards adhered to by the major airlines. That pilots are being told to think twice before declaring costly emergencies. And that Allegiant's maintenance department***

Class Action Complaint for Violation of the Federal Securities Laws

*tries to talk pilots out of reporting problems with their aircraft to avoid delays and keep the planes moving.*

*Daniel Wells: What I hear from the Allegiant pilots are-- they get-- a call from maintenance control, from-- who is-- an agent of the company and says, "Y-- you didn't write anything up, did you?" Meaning you didn't notice any maintenance problems on the airplane. And that's a very clear-- message to send to pilots that the company is discouraging you from-- recording maintenance deficiencies.*

*Steve Kroft: Is that legal?*

*Daniel Wells: No, because our captains are required to report any mechanical deficiencies of an aircraft.*

In response, Allegiant's statement to us says, in part:

"Any employee who fails to report safety-related concerns through available channels is in violation of company policies, and may also be in violation of federal regulations."

*Steve Kroft: The head of the pilots' union told us that Allegiant's maintenance operation is discouraging pilots from reporting mechanical difficulties on the flights. Would that alarm you?*

*John Duncan [Executive Director of Flight Standards at the FAA]: Certainly discouraging pilots from reporting-- legitimate-- maintenance problems-- would concern me a great deal.*

*Steve Kroft: That's against the law, isn't it? I mean--*

*John Duncan: It's certainly against--*

*Steve Kroft: --aren't pilots required to report this?*

*John Duncan: They are. It certainly doesn't meet the safety standards that we would anticipate*

\* \* \*

Class Action Complaint for Violation of the Federal Securities Laws

*Steve Kroft: Do you know anybody in the industry that-- that flies Allegiant?*

*Loretta Alkalay [Former FAA Attorney]: No. (LONG PAUSE) No. And I know that a lot of people talk about how they don't fly Allegiant, so it's very concerning. I know people that worked at the FAA who say they would never fly Allegiant.*

*Steve Kroft: I mean, that's quite an admission. I mean, this just seems like one of those secrets that everybody knows, and then if you have a plane go down, it'll all come out.*

*Loretta Alkalay: You know, if, God forbid, there is an accident, I think there will be a lot of people saying, "Well, we knew. We knew and we did nothing."*

(Emphasis added.)

29.     On this news, shares of Allegiant fell $4.65 per share or over 3% to close at $146.40 per share on April 16, 2018.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Allegiant during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Allegiant securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.

Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

Class Action Complaint for Violation of the Federal Securities Laws

- whether the prices of Allegiant securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Allegiant securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Allegiant securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

Class Action Complaint for Violation of the Federal Securities Laws

37.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- • engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Allegiant securities during the Class Period.

43. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

44. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

45. As a result of the foregoing, the market price of Allegiant securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Allegiant securities during the Class Period in purchasing Allegiant securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

Class Action Complaint for Violation of the Federal Securities Laws

46.     Had Plaintiff and the other members of the Class been aware that the market price of Allegiant securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Allegiant securities at the artificially inflated prices that they did, or at all.

47.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

48.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Allegiant securities during the Class Period.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

51.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

52.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Allegiant securities.

53.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

54.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: April 24, 2018                    Respectfully submitted,


                                         **THE ROSEN LAW FIRM, P.A.**

                                         By: /s/ Laurence M. Rosen
                                         Laurence M. Rosen, Esq. (SBN 219683)
                                         355 S. Grand Avenue, Suite 2450
                                         Los Angeles, CA 90071
                                         Telephone: (213) 785-2610
                                         Facsimile: (213) 226-4684
                                         Email: lrosen@rosenlegal.com


                                         Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws