**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.    **CV 18-3417-JFW(ASx)** | Date: July 16, 2018 |

Title:        Daniel Checkman -v- Allegiant Travel Company, et al.

---

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

| PROCEEDINGS (IN CHAMBERS): | ORDER GRANTING MOTION OF CHARLES BRENDON FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL [filed 6/25/18; Docket No. 12] |
|---|---|

On June 25, 2018, Charles Brendon ("Brendon") filed a Motion for Appointment As Lead Plaintiff and Approval of Choice of Counsel ("Motion"). Defendants Allegiant Travel Company ("Allegiant"), Maurice J. Gallagher, Jr. ("Gallagher"), and Scott Sheldon ("Sheldon") (collectively, "Defendants") did not file an Opposition. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for July 23, 2018 is hereby vacated and the matter taken off calendar. After considering the moving papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

On April 24, 2018, Plaintiff Daniel Checkman ("Checkman") filed a putative class action against Defendants on behalf of all purchasers of Allegiant securities between June 8, 2015 and April 13, 2018, alleging claims for relief for: (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5; and (2) violation of Section 20(a) of the Exchange Act. In the Complaint, Checkman alleges that Allegiant, along with Gallagher, Allegiant's CEO, and Sheldon, Allegiant's CFO, made false and misleading statements and failed to disclose information that harmed Allegiant's investors.

**II.     Appointment of Lead Plaintiff**

The Private Securities Litigation Reform Act of 1995 (the "Reform Act") "provides a simple three-step process for identifying the lead plaintiff" in a securities fraud case. *In re Cavanaugh*,

306 F.3d 726, 729 (9th Cir. 2002).  "The first step consists of publicizing the pendency of the action, the claims made and the purported class period."  *Id.*   The second step requires, "the district court [to] consider the losses allegedly suffered by the various plaintiffs," and select as the "'presumptively most adequate plaintiff' . . . the one who 'has the largest financial interest in the relief sought by the class' and [who] 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure'."  *Id.* at 729-30.  The third and final step, requires the court to "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."  *Id.* at 730.

Pursuant to the Reform Act:

> th[is] presumption . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The *Cavanaugh* court cautioned that "a straightforward application of the statutory scheme . . .  provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case . . . So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."  *In re Cavanaugh*, 306 F.3d at 732.  *See also id.* at 739 (holding that the Reform Act was not meant to "authorize the district court to select as lead plaintiff 'the most sophisticated investor available'"); *Ferrari v. Gisch*, 225 F.R.D. 599, 610 (C.D. Cal. 2004) ("Although the court may compare putative lead plaintiffs when assessing financial stake, once the statutory presumption has attached, it cannot be rebutted through relative comparison").

In this case, there is no opposition to the appointment of Brendon as Lead Plaintiff. Moreover, the Court concludes that Brendon is the "most adequate plaintiff" under the PSLRA, 15 U.S.C. § 78u-4(a)(3).  The Reform Act "provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy."  *See Cavanaugh*, 306 F.3d at 732 (emphasis in original).  In addition, Brendon is the presumptive Lead Plaintiff because he has suffered an estimated loss of $25,980.75, and has the largest financial stake in this litigation.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Accordingly, the Court must consider whether Brendon satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and in particular, the requirements of "typicality" and "adequacy."  *See Cavanaugh*, 306 F.3d at 730 (emphasis in original) (stating that the "district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy'").

With respect to typicality and adequacy, "[a] wide ranging analysis . . . is not appropriate" to

determine whether Waterford has made a prima facie showing that it satisfies the requirements of Rule 23, and such a wide ranging analysis "should be left for consideration on a motion for class certification." *Fischler v. AmSouth Bancorp.*, 1997 WL 118429, * 2 (M.D. Fla. 1997); see also *In re Cendant Corp. Litigation*, 264 F.3d 201, 263 (3d Cir. 2001) (emphasis in original) (stating that "[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy"), *cert. denied*, 535 U.S. 929 (2002); *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 546 (N.D. Tex. 1997) ("Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing.  There is no need to require anything more than a preliminary showing at this stage"); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal.1999) (noting that, at this stage of the litigation,"nothing more than a preliminary showing is required").  Moreover, "institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264.

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the [Lead Plaintiffs] have incentives that align with those of absent class members so . . .  that the absentees' interests will be fairly represented." *Takeda v. Turbodyne Technologies, Inc.*, 67 F.Supp.2d 1129, 1136 (C.D. Cal. 1999) (citation omitted).  "Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "Typicality [thus] entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . .  the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Takeda*, 67 F.Supp.2d at 1136-37 (citations omitted).

Brendon's claims are typical because, similar to the other class members, he: (1) purchased Allegiant securities during the Class Period, (2) suffered the same injuries as a result of the same course of conduct by Defendants, and (3) has claims that are based on the same legal theories.  Accordingly, Brendon's claims are substantially similar, if not identical, to those of other class members who invested in Allegiant securities during the Class Period and sustained losses resulting from the alleged false and misleading statements and non-disclosures.  Because a "preliminary showing" is all that is necessary, the Court concludes that Brendon has met his burden of establishing typicality.  *See Cendant*, 264 F.3d at 265 (citations and internal quotation marks omitted) ("in inquiring whether the movant has preliminarily satisfied the typicality requirement, [the court] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based"); *Erikson v. Cornerstone Propane Partners LP*, 2003 WL 22232387, *3 (N.D. Cal. 2003) (noting that "[a]t this stage of litigation, all that is required is a 'preliminary showing' that the lead plaintiff group will satisfy the 'typicality' and 'adequacy' requirements . . .  Lamphere purchased significant numbers of shares of CornerStone stock during the class period and incurred substantial losses allegedly attributable to CornerStone's actions during that period . . . Lamphere thus satisfies the 'typicality' requirement").

Rule 23(a) requires that the person representing a class be able to fairly and adequately to protect the interests of all class members.  Fed. R. Civ. P. 23(a)(4).  Whether the class

representative will adequately represent the class depends on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981). In evaluating whether a class representative is adequate, courts assess whether he has interests antagonistic to the class, and whether his counsel have the necessary capabilities and qualifications. *In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002). Legal representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 855 (9th Cir. 1982). In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D.Ill. 1986). "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Milestone Scientific Securities Litigation*, 183 F.R.D. 404, 416 (D.N.J. 1998).

      The Court concludes that Brendon is an "adequate" plaintiff because he has suffered the largest financial loss, ensuring vigorous advocacy, and Brendon has represented that he is willing and able to undertake the responsibilities of Lead Plaintiff. In addition, Brendon's interests are not antagonistic to those of other class members. To the contrary, Brendon's interests are aligned with those of other class members because each member of the class purchased Allegiance securities in reliance on its allegedly false and misleading statements and non-disclosures. Based on the foregoing, Brendon has made the necessary prima facie showing that he satisfies both the typicality and adequacy requirements of Rule 23. Accordingly, the Court appoints Brendon as Lead Plaintiff in this action.

### III.    Appointment of Lead Counsel

      Once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class." 15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774 (9th Cir. 1977) (quoting *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958)) ("The benefits achieved by consolidation and the appointment of general counsel, I. e. elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation.").

      In this case, Brendon wants to retain The Rosen Law Firm, P.A. ("Rosen") Lead Counsel. The Court has reviewed Rosen's firm resume, and is satisfied that it is capable of serving competently in the role of Lead Counsel. In fact, Rosen has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Accordingly, the Court approves the appointment of Rosen as Lead Counsel in this action.

### IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Brendon's Motion.  The Court appoints Brendon as Lead Plaintiff.  In addition, the Court appoints Rosen as Lead Counsel.

IT IS SO ORDERED.