# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

PRIORITY SEND

CIVIL MINUTES -- GENERAL

Case No.   CV 06-7599-JFW (PLAx)
           CV 06-7771-JFW (PLAx)
           CV 06-8229-JFW (PLAx)
           CV 06-1369-JFW (PLAx)
           CV 06-1403-JFW (PLAx)

Date: February 23, 2007



Title:   Glenn D. Hutton -v- Hansen Natural Corporation, et al.
         Benjamin Kingery v. Hansen Natural Corporation, et al.
         George Walker v. Hansen Natural Corporation, et al.
         Denise Williams v. Hansen Natural Corporation, et al.
         James A Ziolkowski, et al v. Hansen Natural Corporation, et al.

**PRESENT:**
HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

Shannon Reilly
Courtroom Deputy

None Present
Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:
None

ATTORNEYS PRESENT FOR DEFENDANTS:
None

PROCEEDINGS (IN CHAMBERS):   ORDER CONSOLIDATING ACTIONS, APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL

Shareholders of Hansen Natural Corporation ("Hansen") have brought five related actions against the company and certain of its current and former officers and directors for violations of the Securities Exchange Act of 1934 ("Exchange Act"). The five cases, *Glenn D. Hutton v. Hansen Natural Corporation, et al.*, Case No. CV 06-7599 JFW (PLAx), *Benjamin Kingery v. Hansen Natural Corporation, et al.*, Case No. CV 06-7771 JFW(PLAx), *George Walker v. Hansen Natural Corporation, et al.*, Case No. 06-8229 JFW(PLAx), *Denise Williams v. Hansen Natural Corporation, et al.* CV 06-1369 JFW(PLAx), *James A Ziolkowski, et al v. Hansen Natural Corporation, et al.* CV 1403 JFW (PLAx), are putative class actions on behalf of all purchasers of Hansen securities between November 12, 2001 and November 9, 2006.[1] The Court has before it the following motions:

---

[1] The *Kingery* action was filed on behalf of all purchaser of Hansen securities between March 9, 2006 and November 9, 2006. The *Williams* Action was filed on behalf of all purchasers of Hansen securities between November 21, 2001 and November 9, 2006.

- Plaintiff Marinaccio Group's Motion for Appointment as Lead Plaintiff, for Approval of its Selection of Counsel and for Consolidation [filed 1/29/07; Docket No 6];

- Plaintiff City of Hialeah Employees' Retirement System's Motion to Consolidate, for Appointment as Lead Plaintiff and for Approval of Lead Counsel and Liaison Counsel [filed 1/29/07; Docket No. 9];

- Plaintiff Jason E. Peltier's Motion for Appointment as Lead Plaintiff and for Approval of His Selection of Lead Counsel [filed 1/29/07; Docket No. 11];

- Plaintiff Thomas Olk's Motion for Appointment of Lead Plaintiff and Approval of Selection of Lead Counsel [filed 1/29/07; Docket No.15];[2]

- Plaintiff Public Employees Retirement Association of New Mexico and the State of New Mexico Educational Retirement Board for Appointment as Lead Plaintiff, Approval of Their Selection of Counsel, and Consolidation of All Related Cases [filed 1/29/07; Docket No. 20];

- Plaintiff Zimmrich Group's Motion to Consolidate Actions, to Be Appointed Lead Plaintiff and for Approval of Lead and Liaison Counsel [filed 1//29/07; Docket No. 29]; and

- Plaintiff Communications Workers of America Plan for Employees' Pensions and Death Benefits and Iron Workers Local No. 25 Pension Fund's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel [filed 1/29/07; Docket No. 32].[3]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearings calendared for February 26, 2007 are vacated, and the matters taken off calendar.

## I. MOTIONS TO CONSOLIDATE

The Private Securities Litigation Reform Act of 1995 (the "Reform Act") requires the Court to hear motions to consolidate prior to appointing a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The Federal Rules of Civil Procedure authorize courts to consolidate related actions when a common question of law or fact exists among such actions. Fed. R. Civ. P. 42(a).

---

[2] The Court hereby **ADVANCES** to February 26, 2007, Plaintiff Thomas Olk's Motion for Appointment of Lead Plaintiff and Approval of Selection of Lead Counsel which was originally set for hearing on March 5, 2007.

[3] On February 15, 2007, Plaintiffs Daniel J. Amick and Julie A. Anderson filed a Notice of Withdrawal of their Motion for Appointment of Lead Plaintiffs and Lead Counsel Pursuant to Section 21d of the Securities Exchange Act of 1934, and for Consolidation of All Related Actions [filed 1/29/07; Docket No. 24]. On February 22, 2007 Plaintiff Shiv Arora filed a Notice of Withdrawal of his Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel [filed 1/29/07; Docket No. 17].

The class periods in all but two of the five cases are identical. The *Kingery* action alleges a class period of March 9, 2006 to November 9, 2006 and the *Williams* action alleges a class period of November 21, 2001 to November 9, 2006. Both of these alternative class periods are subsumed within the larger class period alleged in all the other cases. Each of the five cases involves the same defendants[4] and allege violations of sections 10(b) and 20(a) of the Exchange Act against Hansen and certain of its current and former officers and directors. The actions all appear to be based on the same common facts and pose common questions of law: whether defendants issued materially false and misleading reports by failing to disclose and misrepresenting Hansen's financial well-being, business and prospects. Thus, the five actions are appropriate for consolidation under Fed. R. Civ. P. 42(a).

Additionally, no opposition to consolidation of the five actions has been filed. The failure of any party to oppose consolidation may be deemed consent to the granting of the motions to consolidate. Local Rule 7-12. Accordingly, the cases listed in the caption above are consolidated for all purposes pursuant to Fed. R. Civ. P. 42(a). The lower numbered case, CV 06-7599 JFW(PLAx), is hereby designated the Master File. All documents filed hereafter shall bear the Master File case number CV 06-7599 JFW(PLAx) and the following caption:

| | |
|---|---|
| IN RE HANSEN NATURAL CORPORATION SECURITIES LITIGATION ) ) ) ) ) ) | Case No. CV 06-7599 JFW (PLAx) CLASS ACTION |

## II. MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVING SELECTION OF LEAD COUNSEL

### A. Factual Summary

The plaintiff class encompasses investors who purchased the securities of Hansen between November 12, 2001 and November 9, 2006 (the "Class Period"). Hansen is engaged in the development, marketing, sale and distribution of beverages in the United States and Canada.[5] Plaintiffs allege that, throughout the Class Period, Hansen issued a number of materially false and misleading reports because it failed to disclose: (1) that Defendants engaged in backdating of stock options grants for certain executives; (2) that Hansen lacked adequate internal controls and was therefore unable to ascertain its true financial condition, and (3) that Defendants engaged in improper accounting practices. Plaintiffs also allege that as a result of certain disclosures Hansen

---

[4] The named defendants are Hansen Natural Corporation, Rodney C. Sacks, Hilton H. Schlosberg, Norman C. Epstein, Harold C. Taber Jr., Mark S. Vidergauz, Mark J. Hall, Michael B. Schott and Thoms J. Kelly (collectively "Defendants"). The *Kingery* Action names as defendants only Rodney C. Sacks and Hilton H. Schlosberg.

[5] This summary is based on the allegations of the Complaint filed in the *Hutton* action–the first-filed complaint. The allegations in the Complaints filed in the other four actions are virtually, if not actually, identical.

made in October and November, 2006, regarding Hansen's improper stock option backdating practices, Hansen's stock fell approximately 22% costing shareholders approximately $500 million.

Glenn D. Hutton filed a class action complaint against Hansen and certain of its current and former officers and directors on November 29, 2006. Four other plaintiffs followed suit. Eight plaintiffs now seek appointment as lead plaintiff and approval of their respective attorneys as lead counsel.

**B.      Legal Standard Governing Appointment of Lead Plaintiff**

The Reform Act provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

If more than one action is filed, only the plaintiff or plaintiffs in the first-filed action are required to publish notice. See 15 U.S.C. § 78u(4)(a)(3)(A)(ii).

Within ninety days of the published notice, "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter . . . referred to as the 'most adequate plaintiff') . . . .." 15 U.S.C. § 78u-4(a)(3)(B)(i).

When selecting a lead plaintiff, the Reform Act provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action . . . is the person or group of persons that–
> (aa) has either filed the complaint or made a motion [for designation as lead plaintiff];
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Pursuant to the Reform Act:

> th[is] presumption . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)((iii))(II).

The Reform Act "provides a simple three-step process for identifying the lead plaintiff" in a securities fraud case. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* The second step requires, "the district court [to] consider the losses allegedly suffered by the various plaintiffs," and select as the "'presumptively most adequate plaintiff' . . . the one who 'has the largest financial interest in the relief sought by the class' and [who] 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure'." *Id.* at 729-30. The third and final step, requires the court to "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730.

The *Cavanaugh* court cautioned that "a straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case . . . So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.* at 732. *See also id.* at 739 (holding that the Reform Act was not meant to "authorize the district court to select as lead plaintiff 'the most sophisticated investor available'"); *Ferrari v. Gisch*, 225 F.R.D. 599, 610 (C.D. Cal. 2004) ("Although the court may compare putative lead plaintiffs when assessing financial stake, once the statutory presumption has attached, it cannot be rebutted through relative comparison").

## C. Discussion

### 1. Pending Motions For Appointment As Lead Plaintiff

There are seven pending motions seeking appointment as lead plaintiff and approval of lead counsel.[6] City of Hialeah Employees' Retirement System seeks appointment as lead plaintiff

---

[6] On January 29, 2007, the Marinaccio Group, consisting of Anthony Marinaccio ("Marinaccio") and Joseph Abdalla filed its' Motion for Appointment as Lead Plaintiff, for Approval of its Selection of Counsel and for Consolidation. Although the Marinaccio Group has not withdrawn its Motion, Marinaccio has apparently withdrawn from the Marinaccio Group. On February 12, 2007, Marinaccio and Jason E. Peltier ("Peltier") filed a joint opposition to the motions of the other plaintiffs seeking appointment as lead plaintiff, and, for the first time requested their appointment as co-lead plaintiffs. In the absence of a *motion* by Marinaccio and Peltier for appointment as co-lead plaintiff, the Court considers Peltier's Motion as it was originally

and approval of Pomerantz Haudek Block Grossman & Gross, LLP as lead counsel, and Glancy Binkow & Goldberg, LLP as liaison counsel. Jason E. Peltier seeks appointment as lead plaintiff and approval of Wolf Haldenstein Adler Freeman & Herz, LLP and Keegan & Baker, LLP as co-lead counsel. Thomas Olk seeks appointment as lead plaintiff and approval of Gutride Safier, LLP as lead counsel, and Brower Piven as liaison counsel. Public Employees Retirement Association of New Mexico and the State of New Mexico Educational Retirement Board seek appointment as lead plaintiff and approval of Cauley Bowman as lead counsel, and Kissel, Boucher & Larson, LLP as liaison counsel. The Zimmrich Group (consisting of Dieter Zimmrich, Michael Mikos and Alex Fryberg) seeks appointment as lead plaintiff and approval of Schiffrin Barroway Topaz & Kessler, LLP as lead counsel, and Brodsky & Smith, LLC as liaison counsel. Finally, Communications Workers of America Plan for Employees' Pensions and Death Benefits and Iron Workers Local No. 25 Pension Fund seek appointment as lead plaintiff and approval of Lerach Coughlin Stoia Gellar Rudman & Robbins, LLP as lead counsel.

### a. Publication

On November 30, 2007, Wolf Haldenstein Adler Freeman & Herz, LLP, counsel to Glenn D. Hutton, the plaintiff who filed the first action, published notice of the pendency of the *Hutton* action over Business Wire, a world-wide business-oriented wire service. The notice advised class members of the filing of the *Hutton* action and of the class period alleged. It stated that if class members wished to serve as lead plaintiff they were required to move for appointment no later than January 29, 2007, sixty days after the date on which the notice was published. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (stating that within "60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff").

### b. Financial Stake

A review of the declarations and briefs submitted by the moving parties demonstrates that Peltier is the presumptive lead plaintiff because he has suffered an estimated loss of $1,455,106.44, and has the largest financial stake in the litigation. Communications Workers of America Plan for Employees' Pensions and Death Benefits and Iron Workers Local No. 25 Pension Fund ("Pension Funds") claim an aggregate loss of approximately $488,000. Public Employees Retirement Association of New Mexico and the State of New Mexico Educational Retirement Board ("New Mexico Funds") claim an aggregate loss of approximately $328,000.[7]

---

filed, with Peltier alone seeking appointment as lead plaintiff based on his loss of more than $1.4 million. As for the Marinaccio Group's motion for appointment as lead plaintiff, with or without Marinaccio, the losses suffered are substantially less than the losses suffered by all other movants.

[7] At the outset, there was a dispute regarding the Pension Funds and the New Mexico Funds estimated losses. Ultimately, the Pension Funds and the New Mexico Funds agreed that their respective estimated losses were the amounts used by the Court. The estimated losses of the remaining movants are less than the losses of Peltier, the Pension Funds and the New Mexico Funds. The City of Hialeah Employees' Retirement System claims an estimated loss of $177,407. Thomas Olk claims an estimated loss of approximately $125,000. The Zimmrich Group claims an estimated loss of $111,561. The Marinaccio Group claims an estimated loss of $47,616.

The Reform Act "provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." See *Cavanaugh*, 306 F.3d at 732 (emphasis in original). Because Peltier has the largest financial interest in the relief sought by the class, he is the presumptive lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Accordingly, the Court must consider whether Peltier satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and in particular, the requirements of "typicality" and "adequacy." See *Cavanaugh*, 306 F.3d at 730 (emphasis in original) (stating that the "district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy'").

### c. Typicality And Adequacy Under Rule 23

"A wide ranging analysis . . . is not appropriate" to determine whether Peltier has made a prima facie showing that he satisfies the requirements of Rule 23, and "should be left for consideration on a motion for class certification." *Fischler v. AmSouth Bancorp.*, 1997 WL 118429, * 2 (M.D. Fla. 1997); see also *In re Cendant Corp. Litigation*, 264 F.3d 201, 263 (3d Cir. 2001) (emphasis in original) (stating that "[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy"), cert. denied, 535 U.S. 929 (2002); *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 546 (N.D. Tex. 1997) ("Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing. There is no need to require anything more than a preliminary showing at this stage"); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal.1999) (noting that, at this stage of the litigation, "nothing more than a preliminary showing is required"). Moreover, "institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264.

#### (i.) Typicality

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the [Lead Plaintiffs] have incentives that align with those of absent class members so . . . that the absentees' interests will be fairly represented." *Takeda v. Turbodyne Technologies, Inc.*, 67 F.Supp.2d 1129, 1136 (C.D. Cal. 1999) (citation omitted). "Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "Typicality [thus] entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Takeda*, 67 F.Supp.2d at 1136-37 (citations omitted).

Peltier's claims are typical because, just like other class members, he: (1) purchased Hansen securities during the Class Period, (2) at prices that were artificially inflated by the allegedly false and misleading statements issued by Defendants, and (3) suffered damage as a result. Accordingly, Peltier's claims are substantially similar, if not identical, to those of other class

members who invested in Hansen stock during the Class Period and sustained losses resulting from the alleged false and misleading statements. Because a "preliminary showing" is all that is necessary, and because Peltier has submitted a sworn certification indicating that he purchased securities and suffered losses during the Class Period, the Court concludes that Peltier has met his burden of establishing typicality. *See Cendant*, 264 F.3d at 265 (citations and internal quotation marks omitted) ("in inquiring whether the movant has preliminarily satisfied the typicality requirement, [the court] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based"); *Erikson v. Cornerstone Propane Partners LP*, 2003 WL 22232387, *3 (N.D. Cal. 2003) (noting that "[a]t this stage of litigation, all that is required is a 'preliminary showing' that the lead plaintiff group will satisfy the 'typicality' and 'adequacy' requirements . . . Lamphere purchased significant numbers of shares of CornerStone stock during the class period and incurred substantial losses allegedly attributable to CornerStone's actions during that period . . . Lamphere thus satisfies the 'typicality' requirement").

(ii.) Adequacy

Rule 23(a) requires that the person representing a class be able fairly and adequately to protect the interests of all class members. Fed. R. Civ. P. 23(a)(4). Whether the class representative will adequately represent the class depends on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981). In evaluating whether a class representative is adequate, courts assess whether he has interests antagonistic to the class, and whether his counsel have the necessary capabilities and qualifications. *In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002). Legal representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 855 (9th Cir. 1982). In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D.Ill. 1986). "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Milestone Scientific Securities Litigation*, 183 F.R.D. 404, 416 (D.N.J. 1998).

Peltier is an "adequate" plaintiff because he has suffered the greatest financial loss, ensuring vigorous advocacy, he has represented that he is willing and able to undertake the responsibilities of lead plaintiff and he is confident that he can adequately monitor and direct counsel in this litigation. Peltier submitted both a certification detailing his purchases of Hansen securities during the Class Period, and a declaration stating that he is willing to accept the responsibilities of serving as lead plaintiff on behalf of the class. Peltier is a life-long resident of California and he holds a degree in business law from Whittier College. *See* Declaration of Jason Peltier in Further Support of His Motion for Appointment As Lead Plaintiff, And for Approval of His Selection of Lead Counsel ¶¶ 4-5. He currently manages a large scale food and beverage business which frequently requires him to consult with and direct legal counsel. *Id.* at ¶ 5. Peltier is also a part time real estate investor. *Id.* Additionally, Peltier manages his own stock portfolio,

as well as, investment and retirement accounts for his wife and his parents. *Id.* at ¶ 6. Finally, Peltier has actively invested in Hansen since 2003 and has appeared at two Shareholder's Meetings. *Id.* at ¶ 7.

Moreover, Peltier's interests are not antagonistic to those of other class members. Rather they are aligned because each member of the class purchased Hansen securities in reliance on its allegedly false and misleading statements. Finally, there is no evidence that Peltier's action is collusive,[8] and he has retained qualified and competent counsel. Proposed lead counsel, Wolf Haldenstein Adler Freeman & Herz, LLP ("WHAFH") has substantial experience litigating securities class actions on behalf of individual investors. *See* Declaration of Rachele R. Rickert in Support of the Motion of the Marinaccio Group For Appointment As Lead Plaintiff, For Approval of its Selection of Counsel and For Consolidation, Exhibit D. The firm has a dedicated class action litigation group which prosecute securities fraud and other investor class actions, and has reportedly recovered billions of dollars on behalf of investors. *Id.* After reviewing the firm's resume, the Court finds that WHAFH is qualified and competent to serve as class counsel.

Based on the foregoing, Peltier has made a prima facie showing that he satisfies both the typicality and adequacy requirements of Rule 23. Accordingly, the Court concludes that he is the presumptively most adequate plaintiff. *See Cavanaugh*, 306 F.3d at 730.

### d.     *The Opposing Movants Have Failed to Rebut the Statutory Presumption*

The third step in determining the lead plaintiff is to afford other plaintiffs the opportunity to present evidence disputing the lead plaintiff's prima facie showing of typicality and adequacy. *Id.* at 730. Pursuant to the Reform Act, the statutory presumption in favor of the most adequate plaintiff can be rebutted in two ways:

> The presumption . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). *See also In re Advanced Tissue Sciences Securities Litigation*, 184 F.R.D. 346, 350-51 (S.D.Cal. 1998). "[O]nce the presumption is triggered, the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive

---

[8] To the extent any of the parties opposing Peltier's appointment argue that Peltier and Marinaccio are acting in collusion, these arguments must fail. First, Peltier, on his own, has the greatest estimated loss among all movants. Peltier need not aggregate his losses with any other party in order to attain his status as the presumptive lead plaintiff. Second, as noted above, the Court only considers Peltier as the moving party requesting appointment as lead plaintiff. Although Marinaccio joined with Peltier in opposing the other motions to be appointed as lead plaintiff, he was not a moving party in Peltier's Motion. *See* note 6 *supra*.

lead plaintiff will not do a fair and adequate job. . . . [t]he inquiry *is not* a relative one." *Cendant*, 264 F.3d at 268 (emphasis in original).

The Pension Funds and the New Mexico Funds have unsuccessfully attempted to rebut the statutory presumption that Peltier's should be appointed as lead plaintiff.[9]

### (i.) The Pension Funds

The Pension Funds concede that Peltier is the presumptive lead plaintiff based on his claimed estimated loss, but they argue that Peltier should not be entrusted with the responsibility of serving as lead plaintiff because of his recent effort to obtain appointment of Marinaccio as his co-lead plaintiff and his original selection of Keegan & Baker, a four person law firm, to manage this class action. Neither of these arguments is availing.

First, the Court does not consider appointment of Marinaccio as co-lead plaintiff with Peltier, because neither party has properly moved for Marinaccio's appointment a co-lead plaintiff. Additionally, there is no need for Peltier to join with Marinaccio as co-lead plaintiff since Peltier alone satisfies the statutory requirements of the presumptive lead plaintiff.

Second, at this stage of the litigation, "the inquiry is not into the adequacy or fitness of counsel but into the adequacy of plaintiff, and the choice of counsel is only an indicator--and a relatively weak one at that--of plaintiff's fitness." *Cavanaugh*, 306 F.3d at 733. In assessing whether the choice of lead counsel casts doubt on the fitness of a presumptive lead plaintiff, the court determines "whether the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* The Pension Funds have not presented any evidence establishing that Peltier's choice of counsel is irrational, tainted by self-dealing or conflict of interest or that it casts serious doubt on his willingness or ability to function as lead plaintiff.[10]

---

[9] The City of Hialeah Employees' Retirement System also opposes Peltier's appointment as lead plaintiff. Because its arguments in opposition Peltier's appointment are the same as those of the Pension Funds and the New Mexico Funds, they are not discussed separately.

[10] The Pension Funds and the New Mexico Funds argue that Peltier's selection of WHAFH as lead counsel after he initially selected only Keegan & Baker is "lawyer maneuvering" which should be rejected by the Court. This argument is unavailing. First, the cases cited in support of the proposition that the Court should not appoint Peltier as lead plaintiff because of his allegedly recent selection of counsel are inapposite. In the cited cases, the Courts rejected the movants eleventh hour attempts to aggregate their claims in order to attain lead plaintiff status. The cases do not relate to the timing of the presumptive lead plaintiff's selection of counsel. Second, Peltier's subsequent selection of WHAFH can be viewed as an effort on Peltier's part to ensure that he is responsibly managing this action by choosing a larger firm with substantially more securities class action experience. It does not necessarily suggest bad faith on the part of Peltier or his counsel that Peltier's selection of new counsel occurred as a result of, or may have been motivated by, the other movants objections to his original selection of Keegan & Baker.

Finally, the Reform Act sets forth only two bases for rejecting the presumptive lead plaintiff: (1) that he will not fairly and adequately protect the interests of the class; or (2) that he is subject to unique defenses that render him incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Pension Funds have not offered any evidence to establish that Peltier would not fairly and adequately protect the interests of the class, or that he is subject to unique defenses. Accordingly, the court concludes that the Pension Funds have failed to rebut the presumption in favor of Peltier's appointment.

(ii.) The New Mexico Funds

Like the Pension Funds, the New Mexico Funds argue that Peltier's attempt to secure the appointment of Marinaccio as co-lead plaintiff and his initial selection of Keegan & Baker as lead counsel indicate that he cannot be entrusted with leading this class action. For the reasons stated above, these arguments are rejected.

The New Mexico Funds additionally argue that as an institutional investor with the largest estimated loss, it is a favored lead plaintiff. However, under the Reform Act, the presumptive lead plaintiff is the person with the largest loss, without regard to whether that person is an individual or institutional investor. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); In re Cavanaugh, 306 F.3d at 729 ("While the words 'most capable' seem to suggest that the district court will engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class, the statute defines the term much more narrowly: The 'most capable' plaintiff--and hence the lead plaintiff--is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23"). There is no per se rule requiring that an institutional investor be appointed lead plaintiff in lieu of an individual who has a larger stake in the litigation. See id. at 737, n. 20 (emphasis in original) ("If financial sophistication had been Congress' principal concern, it would not have made the plaintiff who *lost* the most money the presumptive lead plaintiff."); Steiner v. Aurora Foods Inc., 2000 WL 33911305, *3 (N.D. Cal. 2000) (citations omitted) (explaining that "the [Reform Act] does not limit the presumption of most adequate plaintiff to institutional investors. Rather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the presumption of most adequate plaintiff."); In re Telxon Corp. Securities Litigation, 67 F.Supp.2d 803, 821-822 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor").

Accordingly, the Court concludes that the New Mexico Funds have failed to rebut the presumption in favor of Peltier's appointment.

Because no plaintiff has rebutted the presumption that Peltier should be lead plaintiff, the Court appoints Peltier--the plaintiff with the largest financial stake in the litigation--as lead plaintiff.

### 2. Appointment Of Lead Counsel

Once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the

interests of the class." 15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa). Peltier wishes to retain WHAFH and Keegan & Baker as co-lead counsel.

Peltier has not offered any evidence to suggest that the appointment of more than one lead counsel is appropriate or necessary. Nor has Peltier offered any evidence explaining the role the two firms would play in the litigation, how or if they would divide the work required to prosecute this action, and how they would avoid duplicating each others efforts. Moreover, Peltier has not offered any evidence demonstrating how he would manage, direct and supervise the two firms in their handling of this litigation. See Vincelli v. Nat'l Home Health Care Corp., 112 F.Supp. 2d 1309, 1315 (M.D. Fla 2000) (noting that "[t]he potential for duplicative services and the concomittant increase in attorneys' fees work against the approval of more than one law firm, especially in cases in which one law firm has proven ability to adequately manage and litigate securities class actions.") See also In re Milestone Scientific Securities Litigation, 187 F.R.D. 165, 177-179 (D.N.J. 1999) (requiring that before multiple counsel would be appointed, there must be a showing that "the lead plaintiff will be able to withstand any limitation on, or usurpation of, control and effectively supervise the several law firms acting as lead counsel.")

The Court has reviewed WHAFH's firm resume and is satisfied that it alone is capable of serving competently in the role of lead counsel. As noted earlier, WHAFH has substantial experience litigating securities fraud class actions on behalf of individual investors. While Keegan & Baker appears, from its firm resume, to be an excellent firm with experience in complex commercial litigation, including some class action experience, it does not appear to have significant experience handling securities class actions. Additionally, even if the Court were inclined to consider Keegan & Baker as liaison counsel, Keegan & Baker, like WHAFH, is located in San Diego within the Southern District of California, and Peltier has not established that there are any services that Keegan & Baker could perform that could not be performed by WHAFH. See In re Nice Systems Securities Litigation, 188 F.R.D. 206, 224 (D.N.J. 1999) (rejecting the proposed lead plaintiffs request for approval of liaison counsel, because they failed to offer "any explanation as to what duties would be assumed . . . and why such duties could not be adequately performed by lead counsel. Further, it has not been demonstrated how the duties of the liaison counsel would not be coextensive with those of the lead counsel").

Accordingly, the Court concludes that the interests of the class will be best protected by approving WHAFH as lead counsel, and declining to approve Keegan & Baker as co-lead counsel.

### D. Conclusion re Motions for Appointment As Lead Plaintiff and Approving Lead Counsel

For the foregoing reasons, the Court appoints Jason E. Peltier as lead plaintiff and approves his selection of Wolf Haldenstein Adler Freeman & Herz, LLP as lead counsel. Peltier is directed to file a consolidated class action complaint, not later than sixty (60) days from the date of this Minute Order. The consolidated complaint shall be deemed the operative complaint, superseding all complaints filed in any of the actions consolidated hereunder.

The consolidated complaint shall be treated as if it were the original complaint and filing deadlines shall be determined by the filing date of the consolidated complaint. The Court will dismiss the individual complaints after the filing of the consolidated complaint. Defendants shall respond to the consolidated complaint only.

## III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff Jason E. Peltier's Motion for Appointment as Lead Plaintiff and for Approval of His Selection of Lead Counsel [filed 1/29/07; Docket No. 11]. The Court **DENIES**:

- Marinaccio Group's Motion for Appointment as Lead Plaintiff, for Approval of its Selection of Counsel and for Consolidation [filed 1/29/07; Docket No 6];

- Plaintiff City of Hialeah Employees' Retirement System's Motion to Consolidate, for Appointment as Lead Plaintiff and for Approval of Lead Counsel and Liaison Counsel [filed 1/29/07; Docket No. 9];

- Plaintiff Thomas Olk's Motion for Appointment of Lead Plaintiff and Approval of Selection of Lead Counsel [filed 1/29/07; Docket No. 15];

- Plaintiff Public Employees Retirement Association of New Mexico and the State of New Mexico Educational Retirement Board for Appointment as Lead Plaintiff, Approval of Their Selection of Counsel, and Consolidation of All Related Cases [filed 1/29/07; Docket No. 20];

- Plaintiff Zimmrich Group's Motion to Consolidate Actions, to Be Appointed Lead Plaintiff and for Approval of Lead and Liaison Counsel [filed 1//29/07; Docket No. 29]; and

- Plaintiff Communications Workers of America Plan for Employees' Pensions and Death Benefits and Iron Workers Local No. 25 Pension Fund's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel [filed 1/29/07; Docket No. 32].

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.